OPINION of the Court, by
Judge Logan.
The appellee, who was the complainant in the court below, exhibited his bill for land against the appellants, who rely on the elder patent : it is. therefore incumbent 011. him to shew that he has a good claim to the land ia,s dispute. He claims under the .following entry, viz. “ May 24th 1780, Thomas. Bragg eaters 500 acre*, up- *135 #⅛ a treasury warrant, on the waters of Salt river, adjoining Charles West’s entry of 1000 acres, that joins Charles Simms’s survey, beginning at the south-east corner thereof and extending southwardly and west-wardly for quantity.”
Before copisi of a «urvey coiiM be give® out, the des® cripdon contained in certificate of survey was not acces-fibie to other locators.
Example® »£ evidence not fuf» ficient to ella» blish notoriety of surveys j & of description ira certificate of survey too. vague to lead to it, by reafonabl#-diligencc.
Vide Rúíinstni vs. Cons, unit 134*
To determine the validity of this entry, we must consider West’s entry, upon which it depends.
On the 12th of May 1780, Charles West entered 1000 acres, “ beginning at a large sugar tree, hoop ash and white hickory marked C. S. corner to two surveys made for Charles Simms, on some branches of Salt river, and extending thence with a line of the first survey, snd also with a line of the Rev. David Griffith’s entry, crossing a large branch, and running with lines at right angles to the same to include the quantity,”
This leads us to inquire for Simms’s surveys. On the 25th of April 1780, two surveys were made for Charles Simms, which call to lie “in Kentucky county, on a dry branch of Salt rtver, about 5 or 6 miles from where Powell’s trace crosses Chapline’s fork, and about a quarter of a mile from a small deer lick ; beginning at a honey locust, walnut and mulberry tree marked C. S. near the head of a dry branch of Salt river, about a quarter of a mile from a small deer lick, thence, See. &c. &e, to a sugar tree, hoop ash and white hickory marked C. S. thence,” &c.
But in addition to this, David Griffith’s entry is also called for, which renders it proper to consider it likewise,;
On the 28th of April 1780, David Griffith entered 500 acres, on part of a military warrant, “ to begin at a honey locust, mulberry and walnut tree marked C. S. standing at the head of a drain or dry run waters of the town fork of Salt river, and about three or four miles from Chapline’s fork, where the new trace leading from. Salt river station to Harrodsburg, known by the name of Powell’s trace, crosses the same, corner to a survey dtnade for Charles Simms’s line, and back for quantity.”
It is now to be inquired whether these entries and surveys were, when Bragg’s entry was made, sufficient to give it such specialty and precisian, “ as that others might be enabled with certainty to locate the adjacent residuum.'11
It has often been decided by this court, that a survey, m order to support an entry which calis to adjoin it, *136 must, at the time of maki ig .he ent; y, he either knom< to the generalitv of those conversant in that neighborhood, or possess some call of description leading from some will fcov.wp place, or be tounded nn ni! entry notorious or possessing such description and sue, ever] conformable thereto. These requisites all lead to the same conr lurion, th'-t an entry, to bt good, roust giie the si-tuaron nt the 1: nd it calls for, in relation to other object®, “ so eciolh; ,ird precisely that others might with certainty, by reas >>, hie diligence, find it, and thereby be enabled to locus other warrants on the adjacent residuum..”
It remains to test this entry by those requisites which are deemed indispensable to a good entry.
In one month after Simms’s surveys were made, Bragg’s entry was made. Were these surveys then generally known to those conversant in the neighborhood, of some i»f whom a locator might probably have obtained the necessary information in regard thereto, to locate with certainty the adjacent residuum ?
It appears that at: or about the time Bragg’s entry' ivas made, there were several stations or settlements in the neighborhood of Simms’s surveys; but it does not appear that a solitary person at either of those stations knew either of the surveys, or what land was included therein, when said entry w„s made, so as to have shewn or directed a lev anr how to find them with certainty ; Much less that thov ver. gent rally known to the people tof those stations. Will's u Pearl is the only person who is proven to have known «hese survevs with sufficient certainty to have pointed them out when Bragg’s entry was made, and he resided at the Crab-Orchard, perhaps 40 or 50 miles distant from these surreys, until August 1780, when he left this country.
The rest of the company, Pear! proves, resided ⅛ Loudon and Fauquir counties, in Virginia ; whether they were in Kentucky when Bragg’s entry was made, does not appear.
But it: is proven that Isaac Hite, Isaac Cox and others, fell in company with those who made Simms’s surveys, about that time, but did not continue.long with them §
that, however, Hite had some conversation relative t® said surveys, with Col. Powell and Craven Peyton, two of the company who executed Simms’* surveys.
⅞⅜¥0|_ x Mek vs Gal. *39— ⅜8 j, H'ard mi, Laf
. Whether Isaac Hité and Isaac Coi .obtained such formation with respect to Simms’s . surveys, as would have enabled them to find and to know said «a-rveys, when Bragg’s entry was made, is by no means sadsfao torily proven. The camp of that surveying party was about a mile from the nearest part of those surveys, and in whatever direction they lay from it, Hue and CoS may not have then known. But even if they both could with certainty, and Whitledge also, have shewn or directed a locator how to find these surveys j still, it seem* to this court, that those surveys would not be sufficient: to support an entry made within one month thereafter. The court cannot presume that the surveys were at that time recorded, or even that they were returned by the assistant who executed them to the principal surveyor ; and if they had been so returned and recorded, the surveyor (a) was not required by law to issue a copy. So that the undoubted notoriety of these surveys, when Bragg’s entry was made, was the more indispensable. If the people residing in the most convenient stations or settlements, when this entry was made, did not know ■where to direct a locator to Simms’s surveys, or could not shew them, it seems unreasonable to suppose that he was to be put to that inquiry of every man in the country, and yet it.would seem almost as reasonable to have required him to have done this, as at his peril to know that an individual here and there through the country could point out those surveys. But had the surveyor furnished a copy of Simms’s surveys, as directory to his land, still it does not seem from the evidence in this cause that any, the best acquainted in that part of the country in May 1780, could thereby have found and known ¡he land therein called for by reasonable dill-gence. The objects called for in the surveys, or in West’s and Griffith’s entries, are not shewn in such a manner as to have afforded any material aid in ascertaining the land. In what direction the land lav from where Powell’s trace crossed Chapline’s fork, is not stated in the surveys. It is represented to lie about ⅜ or 6 miles from said crossing ; but a locator was left bewildered as to the course he should go in order to find And the calls for the head of a dry branchy and a '¡maildeer tick, could have furnished very little, if any, aid in finding she sarveys. 'However there ⅛ no evi* *138 dence in the cause which gives those calls a materia* 'tearing in the case. And it seems to the court, that it Simms’s surveys were not sufficient to support an entry made on the 24th of May 1780, Griffith’s entry did not supply the uncertainty and vagueness ; and cif consequence, West’s and Bragg’s entries depending thereorq must also be considered as too indescriptive and uncertain to iccover against the elder legal title. Id need only be farther remarked, that Simms’s entry, in virtue of which these surveys were made, was still more vague-
Decrec reversed, &c.

 Vid, Oti <vit m mu no»